### COLUMBIA PHONOGRAPH CO. v. SHERMAN.

1. SALES—CONTRACTS—BREACH—RETURN OF GOODS PURCHASED.

   The purchaser of goods bought under an agreement permitting him to exchange goods on hand for new goods on specified terms, when the purchaser should order more, is entitled to a credit for the value of all goods returned at the time the seller refused to fill any further orders, thus preventing performance of the exchange agreement.

2. EVIDENCE—BOOKS OF ACCOUNT.

   The evidence was sufficient to justify a verdict for defendants' alleged recoupment, where one of the defendants testified that the firm books were kept under his supervision, that some of the entries were made by him, and others at his dictation, that there was a balance due defendants of an amount stated by him.[1]

Error to Mason; Withey, J. Submitted February 15, 1911. (Docket No. 184.) Decided March 13, 1911. Rehearing denied September 29, 1911.

Assumpsit in justice's court by the Columbia Phonograph Company against John A. Sherman and Frank P.

[1]Party's books of account as evidence in his own favor, see note in 52 L. R. A. 848.

Sherman for goods sold. Plaintiff appealed to the circuit court from a judgment in defendants' favor. Judgment for defendants. Plaintiff brings error. Affirmed.

*E. N. Fitch,* for appellant.

*A. A. Keiser,* for appellees.

MOORE, J. The plaintiff is a New York corporation, dealing in talking machines, attachments, and musical records, with a branch office in the city of Chicago, managed by Charles F. Baer. The defendants are doing business at Ludington, Mich., and dealt in the goods of the plaintiff. The suit was brought in justice's court, where judgment was rendered in favor of defendants. Plaintiff appealed the case to the circuit court, and, from a verdict and judgment in favor of defendants, has brought the case here by writ of error.

The plaintiff claimed there was due it $48.90. Defendants claimed there was due them the sum of $79.02 and the interest thereon. The controversy arises over what allowance, if any, should be made to defendants for certain goods returned. It is the claim of plaintiff that the allowance should be made according to the terms of a circular headed "Wholesale Record Exchange;" while the claim of defendants is that they never saw or had their attention called to this circular, but that it was part of the agreement made when the relations of the parties began that the articles might be returned as defendants did return them. The assignments of error which call for discussion are: *First,* Did the court err in striking from the evidence the circular letter? And, *second,* Is counsel right in saying "there was not a scintilla of evidence in the case that would authorize a judgment in favor of defendants in any amount whatever on any theory of the case?"

*First.* We will be aided in disposing of this question by considering some of the testimony offered by plaintiff. The deposition of Mr. Baer, the manager of the Chicago

branch, was read in evidence. He testified that he had charge of the business, and that there was due the plaintiff $48.90, and that he had mailed defendants a copy of the circular headed "Wholesale Record Exchange."

The following was read into the record:

"December 23, 1908.

"Sherman Brothers,
    "Ludington, Mich.

"*Gentlemen:*

"We acknowledge receipt on the 18th of this month via Pere Marquette Railroad, the following goods: 209–10 Columbia Records; 224 XP records; 67 Columbia Records, and we understand that these records are returned to apply on our regular exchange proposition for which credit will be passed on the 25th of each month, in accordance with the amount of records you have on the particular month. We also attach our special bill to the amount of $1.08 covering the freight which was paid by us on this shipment. Thanking you for many past favors, we beg to remain.

"Yours very truly,
                "R. P. Bell.

"Return Goods Department."

The portions of the "Wholesale Record Exchange" circular material to this inquiry read as follows:

"(*a*) The amount to be credited will be arrived at by using the same rates (list prices and discounts) at which the new records of corresponding kinds are furnished by us. * * *

"(*b*) A new purchase of Columbia records must be made of at least five times the amount of the credit on a money basis. Such new purchases may consist of any kind of Columbia records; it is not required that they be the same kind as the records credited. For example, a dealer can turn in disc records or part cylinder and part disc.

"(*c*) The credit to be entered only after five times its amount has actually been furnished and charged for on the new order. In other words, the credit will not be entered in anticipation that the records will be shipped and charged for on the new order."

The following letter is in evidence:

"April 31, 1909.

"SHERMAN BROTHERS,
  "Ludington, Michigan.
" *Gentlemen:*
  "We have today returned to you by freight, the shipment of old records made to us in December of last year consisting of 209 10-inch records, 224 X.P, 67 Columbia records. It is necessary for us to return these records to you in order that we may close up this item in view of our not being in a position to supply any records purchased and credited on your account since you returned these goods.
        "Yours truly,
              "COLUMBIA PHONOGRAPH CO."

Mr. Meyers, the man who sold the goods, was a witness for plaintiff. On his cross-examination he testified in part as follows:

"I am still the agent of the Columbia Phonograph Company and have charge of their business in this territory. We have another selling agency in this town at this time. J. E. McCourt & Co. became our agent on February 11, 1909. We have a contract with Mr. McCourt, and under it he has the exclusive sale of our product in this territory. Shortly before that time or at that time I received an order from Sherman Bros. for goods, or had one offered me, but it was not accepted. I did not accept it. They tendered it to me, but it was impossible for me to accept it. When I called on Mr. Sherman, the Edison people having made it necessary for dealers to choose between the Edison and Columbia, and they having made up their minds to handle the Edison, and if they did they would not be allowed to handle the Columbia, and so having made up their minds without any chance to change it at all, they of course could not handle the Columbia cylinder, so I had to pick up another dealer, and, if I sold Mr. McCourt the line, I couldn't sell Sherman Bros. too. We sell to but one man in a territory. They have been handling both kinds up to that time."

It is the uncontradicted testimony of Mr. Sherman that he shipped the records in controversy back December 1, 1908. He also testified that he gave Mr. Meyers an order for goods February 15, 1909, which was not filled; that

there was never any talk between Mr. Meyers, or any other representative of the plaintiff, relative to giving up their business; and that he first learned defendants were not to handle plaintiff's goods further 10 or 15 days after he gave the order to Mr. Meyers in February, when the witness saw the goods in Mr. McCourt's window, and upon the receipt of plaintiff's letter of April 31, 1909. Omitting for the moment any consideration of the testimony offered on the part of defendants, we have the following situation disclosed by the testimony offered by plaintiff: It sold defendants goods which might be exchanged subject to the terms of the "Wholesale Record Exchange" circular. It acknowledged the receipt of these goods in its letter of December 23, 1908, "and we understand these records are returned to apply on our regular exchange proposition." This is followed by the defendants' giving Mr. Meyers, the agent for plaintiff, an order for goods in February, which it declined to fill, presumably because it had made arrangements with Mr. McCourt to handle its goods, and because, as testified by Mr. Meyers, we sell to but one man in a territory." This action was followed April 31, 1909, by returning the records receipted for by the plaintiff December 23, 1908, and writing the letter of April 31, 1909, informing the defendants of the return of the records, and stating:

"It is necessary for us to return these records to you in order that we may close up this item in view of our not being in a position to supply any records purchased and credit on your account since you returned these goods."

Taking plaintiff's own version of the transaction, it is perfectly clear that plaintiff by its own conduct made it impossible for defendants to get credit for goods returned according to the provisions of the so-called "Wholesale Record Exchange" circular, and the judge was justified in charging the jury:

"Now, the position the plaintiff is in, is this: According to the testimony in this case, they have severed this relation and placed their goods elsewhere, and refused to

ship goods to the defendants. They say because Edison would not permit the same merchants to handle both classes of goods, but the testimony of Mr. Sherman is that they had been handling both Edison goods and these goods for some time, and the Edison Company never refused to allow them to handle both classes of goods. The plaintiff is in this position, that, having terminated that relation, it refused to take back the goods which Sherman Bros. might have on hand. I say to you in this case, gentlemen of the jury, that the position is untenable, and that Sherman Bros. had a right, when the plaintiff canceled their relations and put their goods elsewhere and refused to ship any more goods to Sherman Bros., the latter had the right to return all the salable goods belonging to the plaintiff then on hand. That eliminates in this case the most perplexing feature of it, and it only remains for you to say how much of a verdict the defendants shall have in this case. I hold that the plaintiff is not entitled to your verdict. That very position is legally untenable."

*Second.* Was there evidence upon which to base a judgment in favor of defendants? Mr. Frank Sherman testified that the books were kept under his supervision, that some of the entries he made himself, including those of the returned goods, that the other entries were made at his dictation, and that there was a balance due defendants of $79 02 If interest is added to this amount, it makes the amount of the verdict.

Judgment is affirmed.

HOOKER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.